

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00154-CR

---

IVAN FIERRO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2019-418,845, Honorable John J. "Trey" McClendon III, Presiding

---

August 30, 2021

## MEMORANDUM OPINION

### Before PIRTLE and PARKER and DOSS, JJ.

A Lubbock County jury found appellant, Ivan Fierro, guilty of the offense of murder.[1] It assessed punishment at forty years in prison. By this appeal, appellant claims the evidence was insufficient to support the judgment. We affirm the judgment of the trial court.

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2019).

## Background

On a July day in 2019, Kyi Baker and Z.C., a minor, went to a trailer house in northwest Lubbock to purchase Xanax. While there, Baker and Z.C. observed a rifle and a safe, in addition to the homeowner's supply of Xanax. Later that day, Baker contacted the homeowner and arranged to meet him at a restaurant to pay for more drugs. However, Baker's invitation was actually a ruse to lure the homeowner away from the house so that Baker and Z.C. could return and steal the safe, gun, and drugs they had seen earlier.

Neither Baker nor Z.C. had a vehicle. Appellant, who is Z.C.'s stepfather and who knew what Z.C. and Baker had planned, agreed to drive the pair back to the house. In the car, the duo donned face coverings and appellant handed a gun to Z.C. Appellant dropped Baker and Z.C. off at the house. Z.C. broke a window in the back of the house and the pair entered the residence. They began searching for valuables. Baker located the safe, which he threw out the back window. He saw appellant pull up in the alley behind the house. He urged Z.C., who was searching for the gun, to get what he could and go. When Baker returned to the window, appellant was gone.

While appellant drove around the trailer park, two neighborhood residents, who had spotted Baker and Z.C. approach the house, began following appellant's vehicle. As a result, after circling the neighborhood for some time, appellant drove away.

Tyler Campos had been driving through the trailer park warning residents that there were unfamiliar people, possibly armed, in the area, and that residents should go inside. As he drove, Campos saw his grandfather, Robert Dendy, walk between the two

2

trailer houses where Baker and Z.C. had gone. Dendy was carrying a gun. Campos heard Dendy say "Freeze!" Campos saw a man run down an alley and jump over a fence. Campos noticed a BB gun lying on the ground.

The man Campos saw was Baker, who had hopped out the window of the house only to find appellant gone. When Dendy came around the corner of the house and confronted him, Baker became frightened and ran down the alley, leaving Z.C. behind. Baker dropped a BB gun he had stolen from the house as he ran. When Baker left the neighborhood, a passing driver offered him a ride and took him back to appellant's apartment.

After Baker cleared the fence, Campos drove back around the trailer park and entered the alley. He did not see Z.C., but he saw Dendy lying on the ground. Dendy had been shot in the chest and was unresponsive. Campos told neighbors to call 911. Dendy was later pronounced dead at the local hospital.

Appellant, Baker, and Z.C. eventually reconvened at appellant's house. Appellant's wife, Daisy Fierro, testified that Baker came home running, "acting all weird." Later, Z.C. came home, bleeding and "not in his [right] state of mind." Z.C. removed a revolver from his waistband and his mother put it in a closet. Later still, appellant arrived home, on foot. He told his wife that he had parked his vehicle elsewhere because he had been chased.

In their search of appellant's apartment later that night, officers found the revolver and a large quantity of Xanax. A forensic analysis determined that the revolver matched

3

the projectile recovered from Dendy's body. DNA matching Z.C.'s profile was found on the gun.

Appellant was charged by indictment with the offense of felony murder. The jury charge included an instruction on the law of parties. After a five-day jury trial, appellant was found guilty.

Analysis

In his sole issue on appeal, appellant asserts that the evidence is legally insufficient to support his conviction for felony murder either as a principal or as a party.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J., concurring). When reviewing all the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906-07 n.26. In our review, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See id.* at 899.

4

We must evaluate all the evidence in the record, both direct and circumstantial, regardless of whether that evidence was properly or improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Finally, we measure the sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Party Liability

Appellant was prosecuted for felony murder. Section 19.02(b)(3) of the Penal Code provides that a person commits the offense of felony murder if he commits "an act clearly dangerous to human life that causes the death of an individual" in the course of and in furtherance of the commission of a felony other than manslaughter. TEX. PENAL CODE ANN. § 19.02(b)(3). The State sought to prove appellant's guilt under Texas Penal Code sections 7.02(a)(2) or 7.02(b). *See* TEX. PENAL CODE ANN. §§ 7.02(a)(2), (b) (West 2021). Section 7.02(a)(2) provides that a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2). Section 7.02(b) provides:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b).

5

Appellant first argues that, under *Nava v. State*, the State was required to prove that appellant intended the result of "the death of an individual" under the "intent to promote or assist" theory of party liability. *See* 415 S.W.3d 289, 298-300 (Tex. Crim. App. 2013). Appellant contends that the State failed to meet this burden.

As set forth above, the jury was instructed on the intent to promote or assist theory in section 7.02(a)(2), as well as the conspiracy theory in section 7.02(b). Thus, sufficient evidence under either theory will support the jury's finding of guilt. Because, for the reasons explained below, we conclude that there is sufficient evidence that appellant was involved in an attempt to carry out a conspiracy to commit a felony, we need not reach the issue of whether appellant intended the death of an individual.

As to the conspiracy theory of party liability, appellant argues that there is no evidence showing that he anticipated that Z.C. would shoot Dendy. Therefore, appellant concludes, he could not be convicted under the conspiracy theory. We disagree with appellant's analysis.

"Section 7.02(b) does not require the State to prove that [a]ppellant actually anticipated the secondary felony, only that the crime is one that *should* have been anticipated." *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (emphasis in original); *see also Leal v. State*, No. 01-14-00972-CR, 2016 Tex. App. LEXIS 2128, at *17 (Tex. App.—Houston [1st Dist.] Mar. 1, 2016, pet. ref'd) (mem. op., not designated for publication) ("[A]ll the conspirators intending to commit one felony may be convicted for any other felony actually committed in furtherance of the intended felony if such felony was one that should have been anticipated in the attempt to carry out the intended

felony."). Thus, the State was required to prove only a conspiracy to commit burglary, that the murder was committed in furtherance of the commission of the burglary, and that a murder should have been anticipated.

In determining whether a defendant has participated in an offense, we review events occurring before, during, and after the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000) (en banc). "Since an agreement between parties to act together in common design can seldom be proven by words, the State often must rely on the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or a common design to commit the offense." *Ervin v. State*, 333 S.W.3d 187, 201 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

Viewing the evidence in the light most favorable to the jury's verdict, it shows that appellant, Baker, and Z.C. had a plan to burglarize a house where they knew drugs were sold and where Baker and Z.C. had obtained Xanax earlier in the day. Appellant drove Baker and Z.C. in his car to the targeted house. Appellant brought a gun, which he gave to Z.C. Baker and Z.C. put on face coverings, exited appellant's car, and forced their entry into the house. Appellant drove around the neighborhood and through the alley behind the targeted house, until he was chased away by residents. The trio prepared for their crime by using face coverings, bringing a gun, and designating a getaway driver. Although appellant may not have planned on the murder or been present when it occurred, the jury could reasonably determine that a murder should be anticipated during an armed burglary involving the theft of drugs. *See, e.g., Gittens v. State*, 560 S.W.3d 725, 736 (Tex. App.—San Antonio 2018, pet. ref'd) (jury could have reasonably

7

determined that defendant should have anticipated that by using firearms during robbery, someone could be killed); *Love v. State*, 199 S.W.3d 447, 453 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (evidence sufficient to show appellant should have anticipated murder when he knew co-conspirator brought a gun to the robbery); *Moore v. State*, 24 S.W.3d 444, 447 (Tex. App.—Texarkana 2000, pet. ref'd) (noting that "when an individual decides to steal property from a private residence, he should anticipate that he might be confronted and that his co-conspirators might react violently to that confrontation"); *Flores v. State*, 681 S.W.2d 94, 96 (Tex. App.—Houston [14th Dist.] 1984), *aff'd*, 690 S.W.2d 281 (Tex. Crim. App. 1985) (murder should have been anticipated as possible result of burglary, where appellant knew accomplice had a gun).

Finding the evidence sufficient to support appellant's conviction, we overrule his sole issue on appeal.

Reformation of Judgment

We note an issue regarding the trial court's judgment. The judgment of conviction reflects that appellant was convicted of murder under section 19.02(b)(1) of the Texas Penal Code. However, the record is clear that appellant was charged and convicted of the means of murder described in section 19.02(b)(3). An appellate court has the authority to reform judgments and correct typographical errors to make the record speak the truth. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (en banc); *Battle v. State*, No. 06-07-00148-CR, 2008 Tex. App. LEXIS 1319, at *8 (Tex. App.—Texarkana Feb. 25, 2008, no pet.) (mem. op., not designated for publication).

We reform the judgment to reflect that appellant's conviction was under section 19.02(b)(3) of the Texas Penal Code.

## Conclusion

Having concluded that the evidence is legally sufficient to convict appellant of murder, we affirm the judgment of the trial court as reformed.

Judy C. Parker
Justice

Do not publish.